410 So.2d 518 (1981)
LARGO HOSPITAL OWNERS, LTD., Chanen Construction Company and Fireman's Fund Insurance Co., Appellants,
v.
INTERNATIONAL GLASS AND MANUFACTURING CO., INC., and Environmental Glass, a Division of Shatterproof Glass, Inc., Appellees.
No. 81-12.
District Court of Appeal of Florida, Second District.
December 18, 1981.
As modified on Denial of Rehearing February 10, 1982.
*519 Mark P. Buell of Shackleford, Farrior, Stallings & Evans, P.A., Tampa, for appellants.
Walt Logan, St. Petersburg, for appellee David Gorman, Trustee in Bankruptcy for International Glass and Manufacturing Co., Inc.
John R. Newcomer, Jr., of Yado, Keel, Nelson, Grandoff, Casper, Bergmann & Newcomer, P.A., Tampa, for appellee Environmental Glass, a Division of Shatterproof Glass, Inc.
OTT, Judge.
International Glass, as subcontractor on the Largo Medical Center, brought this action (1) against the hospital owners and their surety, Fireman's Fund, which had bonded the release of mechanics' liens on the project, to foreclose its mechanic's lien, and (2) against the general contractor (Chanen) for breach of contract. Chanen cross-complained against International Glass for breach of contract. A glass supplier, Environmental Glass, filed a cross-complaint to foreclose either its mechanic's or equitable lien for glass furnished International Glass. One Tifton, who had supplied aluminum window frames to International Glass, intervened and filed a claim against International Glass, Chanen and owners for some $42,000.
(1) On Tifton's claim, the trial court granted summary judgment in Tifton's favor against Chanen for some $17,000 upon uncontroverted evidence that in order to obtain or retain Tifton's continued cooperation in furnishing materials to the project, Chanen had promised in writing to pay that much of the sums then due Tifton from International Glass, and to deduct it from sums Chanen then owed International Glass. The final summary judgment expressly provided that it would be credited in favor of Chanen and set off against any recovery or judgment obtained by International Glass in this action. The propriety of *520 the summary judgment in favor of Tifton is not attacked on this appeal and the failure to allow the agreed credit as a set-off against the International Glass judgment is being corrected by our mandate, infra, in connection therewith.
(2) On International Glass's claim, the trial court ruled that its mechanic's lien was valid. Judgment was therefore entered in favor of International Glass and against the owners and their surety for the amount of its claim, plus prejudgment interest and attorneys' fees. We vacate that judgment and remand the matter to the trial court for entry of a proper judgment (1) crediting appellants with the Tifton judgment and (2) withholding prejudgment interest.
(3) On the claim and counterclaim between International Glass and Chanen for breach of contract, International Glass voluntarily dismissed its action against Chanen during trial when it elected to pursue its mechanic's lien. After trial, the court entered judgment against Chanen on its counterclaim against International Glass. We affirm that judgment, but remand it to the trial court for consideration of the rights of the respective parties to attorneys' fees.
(4) On Environmental Glass's claim, the trial court ruled that it had failed to comply with the statutory noticing requirements and therefore was not entitled to a mechanic's lien, but that it did have an "equitable lien" for the amount of its bill. Accordingly, judgment was entered in favor of Environmental Glass and against the owners and their surety for its claim, plus prejudgment interest and attorneys' fees. We reverse that judgment for a new trial, with instructions.

PERTINENT BACKGROUND
Construction of the medical center began in 1974 and still had not been completed when this case went to trial in 1978. We are concerned here with only the first year of construction, from the spring of 1974 until May 30, 1975, when Chanen shut down the job, gave written notice to all subcontractors and suppliers that the owners were unable to obtain further financing, and advised each of them to "mitigate their damages" where and as possible.
Upon receipt of that notice, International Glass cleared its materials from the project, laid off all special help hired just for that particular job and sent its supervisory personnel to other jobs. At that time, Chanen owed International Glass some $96,500 and International Glass owed Environmental Glass some $69,000.[1] International Glass proceeded to properly notice and perfect its mechanic's lien. Environmental Glass failed to give notice of its claim to the owners, but timely filed a claim of mechanic's lien.
A week or so after May 30, 1975, Chanen resumed operations and tried to persuade International Glass to return to the job. International Glass declined to do so because (1) it had not been paid and (2) it had made other arrangements for its personnel and equipment, pursuant to Chanen's notice to "mitigate its damages." Construction eventually resumed with a new glass subcontractor, only to have the project shut down again in 1976, again because of financial problems.
What caused the unfortunate state of affairs as of May 30, 1975, was the subject of extensive and conflicting evidence at trial. Suffice it to say here, in accordance with the familiar rule that appellate courts do not reweigh conflicting evidence, that there is substantial and credible evidence in the record to support a finding that the owners' loss of financial backing was in no way related to or caused by any default on the part of International Glass or the other *521 subcontractors, and that any failure to maintain the construction schedule for installation of glass was attributable to Chanen's failure to complete necessary preparatory work.

THE JUDGMENT FOR INTERNATIONAL GLASS
We find no merit in appellants' attack on either International Glass's entitlement to foreclose its mechanic's lien or the sufficiency of the evidence to support the amount thereof. By and large, appellants simply ask us to reweigh the evidence and rule in their favor. We cannot do that.
Appellants assert that International Glass was not entitled to prejudgment interest because its contract was with Chanen, and thus it was not in privity with the owners. We agree. Peter Marich & Associates, Inc. v. Powell, 365 So.2d 754, 756 (Fla. 2d DCA 1978); Sharpe v. Ceco Corp., 242 So.2d 464 (Fla. 3d DCA 1970).
We also agree that appellants were entitled to a credit against their obligation to International Glass in the amount of the judgment in favor of Tifton. That judgment expressly so directs. The record does not exactly confirm appellants' statement, at the hearing on their motion for a new trial, that International Glass's attorney (at the time the Tifton judgment was entered) stipulated to the credit proviso, but it does disclose that all counsel in this case were served with copies of the Tifton judgment. Moreover, it surely is no more than equitable that Chanen should be credited with the judgment against it on a debt for which International Glass was originally and primarily responsible.
The judgment in favor of International Glass is VACATED and the court below is directed to enter a new judgment omitting prejudgment interest and reducing the principal by the amount of the Tifton judgment. In view of such substantial reductions, the court will probably wish to reconsider its order for attorneys' fees, which is also VACATED.

THE CROSS-CLAIMS FOR BREACH OF CONTRACT
When International Glass dismissed its cause of action against Chanen for breach of contract, Chanen clearly was the prevailing party on the issues which had been raised in that claim. Under the contract between them, Chanen was entitled to attorneys' fees for whatever services its attorneys may have rendered in defending against that claim.
It may be that the court was of the opinion that the obligations offset each other, but that is rather doubtful, since one claim actually went to trial and one didn't. Perhaps the court felt that International Glass was entitled to a net award, but lumped it all into the fees allowed for the mechanic's lien foreclosure. However, we can't be sure, and are merely speculating.
Since the fees awarded International Glass are elsewhere set aside by this opinion, the question of entitlement to fees under the Chanen/International Glass contract should also be considered when making any new award of fees.

THE JUDGMENT FOR ENVIRONMENTAL GLASS
Obviously conscious of its failure to comply with the statutory prerequisites for a valid mechanic's lien, Environmental Glass's initial pleadings in this case sought foreclosure of its mechanic's lien or, in the alternative, foreclosure of an equitable lien. The trial court, predictably, denied foreclosure of the mechanic's lien, but ruled that Environmental Glass did have a valid "equitable" lien on the premises which the owners' surety, Fireman's Fund, had cleared of liens by bond. Accordingly, the court ruled that the owners and Fireman's Fund were liable for the amount of Environmental Glass's lien.
The trial court was correct with respect to the mechanic's lien, but there was no evidence whatever to support the theory that Environmental Glass had an equitable lien on the medical center. Such a lien arises only upon proof of deception, misrepresentation, *522 or similar fraud. Indiana Mortgage & Realty Investors v. Peacock Construction Co., 348 So.2d 59 (Fla. 2d DCA 1977).
At one juncture of this litigation Environmental Glass seemed to have a clear comprehension of the remedy possibly available to it. It sought and obtained leave to join the Bank of America of California as a party to this litigation. It filed a proposed cross-complaint setting up a cause of action based upon the type of equitable lien recognized by Crane Co. v. Fine, 221 So.2d 145 (Fla. 1969). That case holds that an unpaid materialman or subcontractor who fails to perfect a statutory mechanic's lien may nevertheless be entitled to an equitable lien: against the real property if entitlement thereto, arising out of misrepresentation or fraud (Merritt v. Unkaefer, 223 So.2d 723 (Fla. 1969)) can be demonstrated, or against unexpended construction money held in trust for those who furnish the labor or materials involved in such construction, if "a right of a special nature" can be shown. Environmental Glass went so far as to cite Crane in its motion, and alleged that Bank of America had supplied (and still had in its hands) the construction money for the medical center.
The problem is that, according to the record, Environmental Glass never pursued that theory after its motion was granted. The case went to trial on some novel theory that Environmental Glass had a "statutory nonpriority lien" on the real property pursuant to Crane and chapter 713 of the Florida Statutes. Just how that notion took root is not apparent, but it obviously arose from some misreading or misapprehension of the discussion in Crane. A close reading of that case clearly reveals that the "equitable lien" approved there was not a lien against the real property, but against the "hold-back" fund. 221 So.2d at 148.
Environmental Glass argues that, nevertheless, Fireman's Fund is liable because the bond which transferred the liens from the land to other security was not confined to mechanics' liens, and consequently extended to any and all liens. We need not get involved in that theory, because even if it were true it would not help Environmental Glass, who had no lien of any sort against the real property.
We are not suggesting that Environmental Glass was or is foreclosed from proving an equitable lien against the premises by virtue of some misconduct of the owners, or from pursuing its mid-litigation idea of proceeding against unexpended construction money in someone's hands. Entitlement to prejudgment interest in either of those situations is possible, depending upon the nature and timing of the owners' wrongful act or the custodian's wrongful refusal to pay a claim, but in no event could Fireman's Fund be liable for any such claim, nor would attorneys' fees be recoverable.
The judgment in favor of Environmental Glass is REVERSED with instructions for a new trial in accordance with this opinion. We express no opinion on the propriety of now adding new parties to this six-year-old litigation.
The case is REMANDED for further proceedings in accordance with this opinion.
HOBSON, A.C.J., and OTT and CAMPBELL, JJ., concur.
NOTES
[1] The briefs of the respective parties offer no insight into the perplexing question presented by Environmental's failure to join International Glass as a cross-defendant and the consequent absence from the judgment of any indication whether Environmental's recovery of the amount due it should operate as a credit on any amounts due International Glass. No one mentions the matter, although much ado is made over the relatively insignificant credit arising from the Tifton judgment. We can only assume that the parties have somehow made an arrangement between themselves, and are satisfied with it.